IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| SHANNON KNEECE, | ) |
| | ) |
| Plaintiff, | ) Case No.: 6:22-cv-02776-TMC-KFM |
| | ) |
| v. | ) |
| | ) |
| SYNEOS HEALTH US, INC. D.B.A SYNEOS | ) |
| HEALTH COMMERCIAL SERVICES, LLC, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO COMPEL ARBITRATION OR,
IN THE ALTERNATIVE, TO DISMISS**

Defendant Syneos Health US, Inc. ("Defendant"), by and through its undersigned counsel, and pursuant to 9 U.S.C. §§ 3-4 and Rule 12(b) of the Federal Rules of Civil Procedure, and Local Civil Rule 7.04 DSC, hereby submits this Memorandum in Support of its Motion to Compel Arbitration or, in the Alternative, to Dismiss. In addition, because Plaintiff brought this action after being put on notice that the claims were subject to arbitration, Defendant requests sanctions against Plaintiff, in the form of the costs and fees associated with bringing this Motion.

**I.     INTRODUCTION**

Upon commencing her employment with Defendant, Plaintiff Shannon Kneece ("Plaintiff") and Defendant entered into an agreement to submit certain claims pertaining to Plaintiff's employment to final and binding arbitration. By filing the present action, Plaintiff now attempts to renege on her agreement. The strong federal policy in favor of enforcing arbitration agreements in employment cases, however, prevents Plaintiff from breaching her contract with

Defendant. That same policy requires this Court to enter an order compelling Plaintiff to arbitrate her claims and dismissing or staying this action pending arbitration.

## II.     PROCEDURAL POSTURE

Plaintiff Shannon Kneece ("Plaintiff") filed a Complaint in this matter on July 19, 2022, alleging claims arising out of her employment with and separation from Defendant. (ECF No. 1-1, Compl.) Specifically, Plaintiff asserts claims for religious discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as well as under the South Carolina Payment of Wages Act.

## III.    RELEVANT FACTS

On or about March 22, 2021, Defendant hired Plaintiff to work as an Immunology Specialist. (ECF 1-1, Compl. ¶¶ 1, 6.) On March 9, 2021, as part of the hiring and onboarding process, Plaintiff was given access to Defendant's Peoplefluent platform in order to review and electronically sign various employment-related documents, including the Mutual Arbitration Agreement. (*See* Signed Declaration of Jennifer Trucks dated September 16, 2022, attached hereto as Exhibit A ¶ 19.) In order to access the Peoplefluent platform and complete the new-hire requirements, Plaintiff was provided with a system-generated, unique link to login and create a User Name and personal password; only Plaintiff had knowledge of her password. (*Id.* ¶¶12-13, 18-19.) Agreeing to the Mutual Arbitration Agreement was an express condition of Plaintiff's commencing employment with Defendant. (*Id.* ¶ 14.)

Once Plaintiff created her User Name and password, she was asked to complete a task list of pre-onboarding documents. (*Id.* ¶ 13.) One of the tasks that the individual was required to complete is the Mutual Arbitration Agreement. (*Id.*) First, Plaintiff clicked on a link within Peoplefluent to review the Mutual Arbitration Agreement. (*Id.* ¶ 15.) Once she clicked on the link

2

to review the full Mutual Arbitration Agreement, the website opened the agreement for Plaintiff to read in Portable Document format ("PDF"). (*Id.* ¶ 16.) In order to proceed past the webpage displaying the full Mutual Arbitration Agreement, Plaintiff clicked on a statement affirming that she both had received and read the Mutual Arbitration Agreement. (*Id.* ¶ 17.) To sign the Mutual Arbitration Agreement, Plaintiff had to enter her first and last name and then select a signature to use. (*Id.* ¶ 18.) After taking these steps, the website then prompted Plaintiff to clock on another button, which placed her digital signature on the Agreement, along with the date of signature. (*Id.*) Page five of the Mutual Arbitration Agreement thus reflects: "Agreed to by: Shannon Kneece" on March 9, 2021. (*Id.* ¶ 19.)

> The Agreement provides in pertinent part as follows:
>
> Except as described in Section 3, titled "Claims Not Covered by this Agreement," all disputes, claims, complaints, or controversies ("Claims") that you have had in the past, have now, or at any time in the future may have, against the Company and/or any of its parents, subsidiaries, affiliates, predecessors, successors, assigns, current, former, or future officers, directors, employees, and/or those acting as an agent of the Company (which make up the definition of the "Company" for purposes of this Agreement), or that the Company has now or at any time in the future may have against you ("Covered Claims"), arising out of and/or related to your application for employment with the Company, employment with the Company, and/or the termination of your employment with the Company will be resolved by arbitration and NOT by a court or jury.
>
> Claims that the Parties agree to arbitrate include, but are not limited to, the following:
>
> - claims for breach of contract, tort claims, and claims for wrongful discharge;
>
> - discrimination and/or harassment claims, retaliation claims, and claims for failure to accommodate;
>
> - claims for overtime, wages, leaves, paid time off, sick days, compensation, penalties or restitution, or any other form of remuneration or pay;
>
> - all claims for violation of a federal, state, or local statute or ordinance creating employment rights including but not limited to

3

> claims under the Fair Labor Standards Act ("FLSA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Worker Adjustment and Retraining Notification Act ("WARN"), the Equal Pay Act ("EPA"), the Americans With Disabilities Act ("ADA"), and the Family and Medical Leave Act ("FMLA"); and
>
> - any other claim under any federal, state, or local statute, constitution, regulation, rule, ordinance, or common law, arising out of and/or related to your application for employment with the Company, your employment with the Company, and/or the termination of your employment with the Company.
>
> **THE PARTIES HEREBY FOREVER WAIVE AND GIVE UP THE RIGHT TO HAVE A JUDGE OR A JURY DECIDE ANY COVERED CLAIMS.** Either party to this Agreement may make application to a court for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration.

(Ex. A, Trucks Decl. at Att. 1, p. 1 (emphasis in original)).

Thus, the Agreement makes clear that any and all covered claims or disputes must be resolved in accordance with the rules and procedures set forth in the Agreement. Accordingly, both Plaintiff and Defendant contractually agreed that they would submit certain disputes relating to Plaintiff's employment to final and binding arbitration.

However, despite signing the Agreement at the time of hire, Plaintiff filed the present action against Defendant on July 19, 2022, bringing claims against Defendant for discrimination in violation of Title VII or the Civil Rights Act of 1964 and for violation of the South Carolina Payment of Wages Act. (*See* ECF 1-1, Compl.) Since the filing of the Complaint, the undersigned counsel for Defendant has requested that Plaintiff voluntarily dismiss the matter and refer the matter to arbitration, including providing proof that Plaintiff had accepted the Mutual Arbitration Agreement. (*See* 8/24/2022 Emails between Counsel, attached as Exhibit B.) Plaintiff has refused.

Defendant denies the material allegations of the Complaint, and further denies any and all alleged liability to Plaintiff. Based on Plaintiff's assent to the Agreement, as evidenced by her

4

signed acknowledgment and employment with Defendant after consenting to the Agreement, Defendant now moves this Court to stay litigation and compel Plaintiff to arbitrate the claims she has asserted in this action or, alternatively, to dismiss Plaintiff's claims against Defendant in their entirety.

## IV.     APPLICABLE STANDARDS

### A.     Arbitration is favored by the courts.

Courts consistently adhere to the strong federal policy favoring arbitration and arbitration agreements. *See e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999). One of the primary sources and expressions of this federal policy is contained in the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq. See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) ("The FAA reflects 'a liberal federal policy favoring arbitration agreements.'") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Section 2 of the FAA states as follows:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The provisions of the FAA are mandatory. Consequently, courts must stay a proceeding that is subject to arbitration and compel arbitration when a valid arbitration agreement exists. 9 U.S.C. § 3-4; *Adkins*, 303 F.3d at 500 ("The FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' 9 U.S.C. § 3. This stay-of-litigation provision is mandatory.").

5

### B.     No specific defenses can be asserted to defeat an arbitration agreement.

The Supreme Court has reaffirmed its continued deference to arbitration agreements by holding that the FAA makes agreements to arbitrate valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343-352 (2011). Arbitration agreements are, therefore, on equal footing with all other contracts and must be enforced according to their terms. *Id*. Defenses to an arbitration agreement are those that exist for any contract; no special defenses exist to an arbitration agreement. *Id*. In fact, even general contract provisions that would render nugatory the FAA's favoritism of arbitration agreements cannot be applied to defeat arbitration. *Id*.

### V.     **LEGAL ARGUMENT**

#### A.     Plaintiff's claims are covered by the Agreement.

Consistent with the strong federal policy favoring arbitration, it is well-settled that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *see also Adkins*, 303 F.3d at 500 ("[D]ue regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration.") (citation and internal quotation marks omitted)). The Supreme Court has stated that courts should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). Additionally, when a mandatory arbitration provision is broadly drafted, only an "express provision excluding a particular [claim] from arbitration . . . [or] the most forceful evidence of a purpose to exclude the claim from arbitration" will remove such a claim from

6

consideration by an arbitrator. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Plaintiff's claims are covered under the Agreement. First, Paragraph 1 of the Agreement outlines Covered Claims and specifically includes: "**all** disputes, claims, complaints, or controversies ('Claims') that you have had in the past, have now, or at any time in the future may have, against the Company . . . arising out of and/or related to your . . . employment with the Company, and/or the termination of your employment with the Company . . . [including] claims for . . . discrimination . . . and claims for failure to accommodate [and] claims for . . . wages . . . or any other form of remuneration or pay[.]" (Trucks Decl., Att. 1.) Accordingly, on its face, the Agreement covers any dispute arising out of or relating to Plaintiff's employment, including any claims of termination, discrimination, failure to accommodate, and failure to pay wages. Plaintiff's claims fall squarely within these categories of Covered Claims. Moreover, Paragraph 1 specifically enumerates that Title VII claims are subject to final and mutually-binding arbitration. (*See id.*)

**B.     The Agreement is part of a contract or transaction involving interstate commerce and is valid under general contract principles.**

Because the claims between the parties are arbitrable and the Agreement clearly evidences the intent to arbitrate them, the only question remaining is whether the Agreement is enforceable. Under the FAA, an arbitration agreement is enforceable if it is: (1) part of a contract or transaction involving interstate commerce; and, (2) valid under general principles of contract law. *See Adkins*, 303 F.3d at 500-01. As explained below, the Agreement satisfies both elements and, therefore, is enforceable under the FAA.

**1.     The matters covered by the Agreement involve interstate commerce.**

The FAA's reference to interstate commerce reflects Congressional intent to extend FAA coverage to the limits of federal power under the Commerce Clause. *See Allied-Bruce Terminix*

7

*Cos. v. Dobson*, 513 U.S. 265, 274 (1995). Accordingly, the determination of whether a transaction or contract "involves" interstate commerce requires an expansive construction of the term to effectuate Congress's goal of encouraging alternative dispute resolution mechanisms. *Id*. A matter "involves" commerce under the FAA if it simply "affects" commerce − a standard commonly applied by courts to situations in which it is clear that Congress intended to exercise its Commerce Clause powers to the fullest extent. *Id*. at 274-76. The United States Supreme Court reiterated all of the above points in *Circuit City v. Adams*, 532 U.S. 105 (2001).

In *McElveen v. Mike Reichenbach Ford Lincoln, Inc.*, this Court held that an employee who works in an area of its employer's business that involves interstate commerce is equally involved in interstate commerce. No. 4:12-874-RBH-KDW, 2012 WL 3964973, at *2-3 (D.S.C. Aug. 22, 2012), *report and recommendation adopted*, No. 4:12-874, 2012 WL 3965139 (D.S.C. Sept. 11, 2012). Here, Plaintiff worked as an Immunology Specialist, promoting and marketing Defendant's products in Western North Carolina. (*See* Trucks Decl. ¶ 22.) Defendant operates a national (and international) network of locations, and in her position as Immunology Specialist, Plaintiff often interacted with equipment and supplies ordered from out-of-state vendors. (*Id*. at ¶ 23.) Such coordination between Plaintiff's work in North Carolina and other Syneos locations and offices occurred through means of interstate commerce. (*Id*. ¶ 24.) Additionally, payments received by Syneos for its services are often secured from different states through means of interstate commerce and may be processed through Syneos's corporate offices in North Carolina. (*Id*. ¶ 25.) Plaintiff herself would have used equipment and supplies originating from different states. (*Id.* ¶ 26.)

## 2. The Agreement is enforceable under general contract law.

An arbitration agreement's validity is determined by reference to general principles of contract law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 685 (1996) ("'[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'" (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)). It is also well-settled that an employer's agreement to arbitrate its claims against the employee—as Syneos did here—is adequate consideration to support the employee's mutual promise. *See Adkins*, 303 F.3d at 501; *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272 (4th Cir. 1997). This is true even if the employee signs the agreement before ever becoming employed. *Adkins*, 303 F.3d at 504 (holding that an arbitration policy contained in an employment application that the employee executes prior to commencing employment retains its enforceability "until the relationship itself is severed").

The Fourth Circuit enforces arbitration agreements in an employment context as long as: (1) the employee is not a transportation worker; (2) the agreement does not attempt to foreclose substantive rights; and, (3) there is no evidence that the arbitration would be prohibitively expensive to the employee. *See Adkins*, 303 F.3d at 502-05. Application of the forgoing factors in this case makes it clear that the arbitration provisions contained in the Agreement should be enforced with respect to Plaintiff's claim.

First, Plaintiff was not a transportation worker. She worked as an Immunology Specialist. Second, the Agreement gives Plaintiff access to all the legal claims she would have in federal court. Third, the Agreement would not be prohibitively expensive for Plaintiff. In Paragraph 5 of the Agreement, Plaintiff pays the "normal filing fee in the state or federal court in which the dispute arise" (which Plaintiff has already done here), and Syneos agrees to pay the arbitrator and the

arbitration fees. (*See* Trucks Decl., Att. 1 at ¶ 5.) By absorbing the additional costs associated with the arbitration forum, Syneos does not require Plaintiff to pay such costs. Finally, the Agreement is mutually binding, evidencing sufficient consideration to support the agreement. In sum, the arbitration agreement between Plaintiff and Syneos satisfies all of the requisite elements needed to be valid and enforceable under the FAA. Accordingly, the Court should stay litigation and compel Plaintiff's claim to binding arbitration.

### C. Because Plaintiff's claims are covered by the Agreement, this Court may dismiss the Complaint based on ground it is subject to binding arbitration.

The Fourth Circuit has made clear that, "Notwithstanding the terms of [9 U.S.C.] § 3,…dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels, Inc. v. BSR Tropicana Resort, Inc*., 252 F.3d 707, 709-10 (4th Cir. 2001). Plaintiff's Title VII and Payment of Wages Act claims against Defendant are covered by the Agreement and, thus, are subject to mandatory and binding arbitration. (*See* Trucks Decl, Att. 1 at ¶ 1.) Accordingly, the Court may dismiss Plaintiff's lawsuit in its entirety rather than staying the litigation. *Choice Hotels, Inc.*, 252 F.3d at 709-10.  The Agreement itself demonstrates the proper nature of this result, as it expressly states the parties submit disputes to mandatory-binding arbitration rather than the courts. (*See* Trucks Decl. Att. 1 at ¶ 1.)

### D. The Court should award Defendant's fees and costs incurred in filing this Motion.

Pursuant to the terms of the Mutual Arbitration Agreement, Plaintiff was bound to participate in arbitration and was contractually prohibited from alleging her claims in any other forum.  (*See* Trucks Decl. Att. 1.)  Further, after Plaintiff initiated this lawsuit, counsel for Defendant reminded Plaintiff of her contractually-binding obligation to arbitrate her claims.  (*See* Ex. B.)  Nonetheless, Plaintiff refused to withdraw or dismiss her action in favor of arbitration.  (*Id.*)

While the American Rule for costs and fees requires each party to bear its own costs for litigation, this rule "is subject to certain limited exceptions derived from the courts' historical powers of equity." *Teamsters Local Union No. 505 v. Am. Ben. Corp.*, No. 3:09-0208, 2010 WL 1417808, at *2 (S.D. W.Va. Apr. 2, 2010) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245 (1975); *United Food & Commercial Workers v. Marval Poultry Co.*, 876 F.2d 346, 350 (4th Cir. 1989)). Courts in the Fourth Circuit have awarded attorneys' fees and costs where a party's refusal to submit all matters to arbitration was "without justification." *Id.* (citing *Marval*, 876 F.2d at 350).

Here, Plaintiff "acted without justification when [she] refused to submit all matters to arbitration and delayed those proceedings…, greatly hindering the primary purpose of arbitration – 'the quick resolution of disputes and the avoidance of the expense and delay associated with litigation.'" *Id.* (citing *Raymond James Fin. Servs., Inc. v. Bishop*, 59 F.3d 183, 190 (4th Cir. 2010)). Plaintiff's failure to withdraw her Complaint in light of the unambiguously binding terms of the Mutual Arbitration Agreement, in conjunction with Defendant's reminder that arbitration was the required forum, was without justification and was not based on any reasonable chance of success.

"In suits to compel one party to submit to arbitration or abide by an award, fees are generally awarded if the defaulting party acted without justification, or if the party resisting arbitration did not have a reasonable chance to prevail." *Chauffeurs, Teamsters, & Helpers v. Stoehmann Bros.*, 625 F.2d 1092, 1094 (3d Cir. 1980). Because Plaintiff's resistance to binding arbitration was wholly without merit and unsupported by applicable law, Defendant is entitled to its attorneys' fees associated with this Motion.

If the Court grants this Motion and Defendant's request for sanctions, counsel for Defendant will submit an affidavit supporting the amount of the award, to be calculated by the lodestar method. It is not possible to calculate the total amount at this time, as Defendant anticipates further briefing and potential argument on this issue.

## VI.     CONCLUSION

The Agreement signed by Plaintiff represents a mutually-binding mandatory arbitration agreement between her and Defendant. Defendant requests enforcement of the Agreement, as Plaintiff's pursuit of this litigation directly contradicts the clear understanding of the parties. Pursuant to Sections 3 and 4 of the FAA, the Court should grant Defendant's motion, stay all litigation relating to Plaintiff's claims, and compel Plaintiff to comply with the mandatory arbitration agreement between the parties. Alternatively, Defendant requests that the Court dismiss the Complaint, in its entirety, based on the fact that Plaintiff's claim is subject to mandatory arbitration under the Agreement.

Further, because Plaintiff's refusal to bring this matter in arbitration was "without justification," and she had no "reasonable chance" to prevail in opposing this Motion, Defendant requests sanctions, in the form of the costs and fees incurred in bringing the instant Motion.

Dated this 16th day of September 2022.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

s/Luci L. Nelson
Ashley P. Cuttino
Fed. I. D. # 9215

Luci L. Nelson
Fed. I.D. # 10341

Attorneys for Defendant Syneos Health US, Inc.

The Ogletree Building
300 North Main Street, Suite 500
Greenville, SC  29601
864-271-1300
864-235-8806
ashley.cuttino@ogletree.com
luci.nelson@ogletree.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").

John G. Reckenbeil
Law Office of John Reckenbeil, LLC
P.O. Box 314
Mauldin, SC 29662
john@johnreckenbeillaw.com

s/Luci L. Nelson
Luci L. Nelson

14

52801469.v2-OGLETREE