# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| SHANNON KNEECE, | ) | CIVIL ACTION NO.: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SYNEOS HEALTH US, INC. D.B.A. | ) | |
| SYNEOS HEALTH COMMERCIAL | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF JENNIFER TRUCKS

I, Jennifer Trucks, hereby declare and state:

1. My name is Jennifer Trucks. I am of legal age and competent to make this Declaration. The following is true and correct either of my own personal knowledge or on information and belief based on business records of Syneos Health US, Inc., in which case I am so informed and believe such matters to be true, based on business records created and maintained by Syneos Health US, Inc. in the ordinary course of business at or near the times of the acts, conditions, or events recorded therein, and of which I am an authorized custodian of records. I understand that this Declaration is being given under oath for use in the above-captioned litigation and, if called upon to do so, I can testify in Court as to the statements herein.

2. I am currently employed as Director of Global Human Resources Shared Services for Defendant Syneos Health US, Inc. ("Syneos"). I have worked for Syneos in this capacity since March of 2022. Prior to this position, I held similar roles at other large companies, including servicing as the Director of Shared Services for two years.

1

3. Syneos is a fully integrated biopharmaceutical company, based in Morrisville, North Carolina and operates throughout the United States of America, including in South Carolina.

4. I am aware, based upon my review of Syneos's personnel records concerning her, that Plaintiff Shannon Kneece was hired to work as an Immunology Specialist on March 22, 2021.

5. In my capacity as Director of Global Human Resources Shared Services, I am familiar with the onboarding process utilized by Syneos for newly hired employees in and around March 2021 when Ms. Kneece was hired (*i.e.*, the process by which new hires completed documents as a part of the process of being hired). Ms. Kneece, like all employees, was subject to the same onboarding process, as detailed below.

6. The onboarding process described in this Declaration was utilized by Syneos to onboard field sales staff, including Ms. Kneece, beginning in November 2020 and is still used today. Throughout that period, Syneos utilized a secure web platform known as "Peoplefluent," as described in this Declaration. The Peoplefluent platform is the system used by persons wishing to apply for employment with Syneos and for newly hired employees to complete the hiring and onboarding process (e.g., to electronically receive and sign their Restrictive Covenant Agreement, receive and sign their Mutual Arbitration Agreement, receive the CEO Welcome letter, etc.)

7. I regularly use Peoplefluent in the course of my daily work. I am familiar with the front and back ends of Peoplefluent; that is, how it was used by applicants and employees and the actions and data it recorded.

8. Throughout the time period described by this Declaration, the Peoplefluent system recorded use of the system by applicants and employees, including the date and action an employee took on Peoplefluent, *e.g.*, completing and electronically signing an arbitration agreement. Documents signed by an applicant or employee through the Peoplefluent system are annotated by the system with the details of the person's electronic signature. I am a duly authorized custodian of such Peoplefluent records of Syneos, and I have authority to certify such records as authentic and accurate.

9. In the period from before March 2021, when an individual applied for employment with Syneos and received a verbal offer, the individual/candidate was moved into a "Hire" folder in the online Peoplefluent system.

10. At that point, the Peoplefluent system generated an email, sent to the candidate's personal email address with a unique link for "Personal Details." Once the candidate clicked on the "Personal Details" link, the Peoplefluent system asked the candidate to add her personal information to the system.

11. Once the candidate added her personal information to the "Personal Details" link, she was moved into another online folder within the Peoplefluent system for "Pre-Onboarding."

12. Once this occurred, the Peoplefluent system generated a second email to the individual's personal email address. This email contained another unique link, which requested that the individual create a User Name and personal password. The password is known only to the individual.

3

13.  Once the individual created User Name and password, she was asked to complete a task list of pre-onboarding documents. One of the tasks that the individual was required to complete is the Mutual Arbitration Agreement.

14.  At the time Ms. Kneece was hired, each new hire (including Ms. Kneece) was required to review and accept Syneos's Mutual Arbitration Agreement through the Peoplefluent platform. Agreeing to the Mutual Arbitration Agreement was an express condition of each newly hired employee's employment with Syneos, including Ms. Kneece.

15.  The Peoplefluent system required the employee to click on the link to review the full Mutual Arbitration Agreement before proceeding.

16.  Once the employee clicked on the link to review the full Mutual Arbitration Agreement, the website opened the agreement for the employee to read in Portable Document format ("PDF").

17.  In order to proceed past the webpage displaying the full Mutual Arbitration Agreement, the employee clicked on a statement affirming that she both had received and read the Mutual Arbitration Agreement.

18.  To sign the Mutual Arbitration Agreement, the employee had to enter their first and last name and then select a signature to use. After taking these steps, the website prompted the employee to click on another button, which placed her digital signature on the Agreement, along with the date of signature.

19.  I have reviewed the available Peoplefluent records for Ms. Kneece, including her Mutual Arbitration Agreement, which reveals that on March 9, 2021, Ms. Kneece accessed Peoplefluent using the unique login ID and password she had created, completed the process outlined above, and electronically signed the Mutual Arbitration Agreement. A true and

correct copy of Syneos's Mutual Arbitration Agreement signed by Ms. Kneece is attached hereto as Attachment 1. Page 5 of the document reflects, "Agreed to by: Shannon Kneece" and is dated 03-09-2021.

20. The screenshot of the Peoplefluent system attached hereto as Attachment 2 also evidences that Ms. Kneece completed the task of accepting the Mutual Arbitration Agreement on March 9, 2021.

21. Throughout the period described by this Declaration, all Syneos employees were required to use their login ID and password when they logged into Peoplefluent and signed electronic forms and agreements. Further, all Syneos employees were required to review and agree to the Mutual Arbitration Agreement before commencing employment.

22. During her employment with Syneos, Ms. Kneece worked as an Immunology Specialist, promoting and marketing Syneos's products in Western North Carolina.

23. Syneos operates a national (and international) network of locations, and in her position as Immunology Specialist, Ms. Kneece often interacted with equipment and supplies ordered from out-of-state vendors.

24. Such coordination between Ms. Kneece's work in North Carolina and other Syneos locations and offices occurred through means of interstate commerce.

25. Additionally, payments received by Syneos for its services are often secured from different states through means of interstate commerce and may be processed through Syneos's corporate offices in North Carolina.

26. In her position with Syneos, Ms. Kneece would have used equipment and supplies originating from different states.

27.  If called as a witness, I could and would testify competently to the matters set forth herein.

I declare, pursuant to 28 U.S.C. § 1746 and under penalty of perjury under the laws of the United States, that the foregoing is true and correct.

Executed this 16th day of September 2022.

By: Jennifer Trucks

# ATTACHMENT 1

**MUTUAL ARBITRATION AGREEMENT**

This Mutual Arbitration Agreement ("Agreement") sets forth the terms of the agreement between Syneos Health, Inc. and you (the "Parties") regarding an alternative approach for resolving employment-related disputes.

1. **Mutual Arbitration Agreement**

    a. Except as described in Section 3, titled "Claims Not Covered by this Agreement," all disputes, claims, complaints, or controversies ("Claims") that you have had in the past, have now, or at any time in the future may have, against the Company and/or any of its parents, subsidiaries, affiliates, predecessors, successors, assigns, current, former, or future officers, directors, employees, and/or those acting as an agent of the Company (which make up the definition of the "Company" for purposes of this Agreement), or that the Company has now or at any time in the future may have against you ("Covered Claims"), arising out of and/or related to your application for employment with the Company, employment with the Company, and/or the termination of your employment with the Company will be resolved by arbitration and NOT by a court or jury.

    Claims that the Parties agree to arbitrate include, but are not limited to, the following:

    - claims for breach of contract, tort claims, and claims for wrongful discharge;

    - discrimination and/or harassment claims, retaliation claims, and claims for failure to accommodate;

    - claims for overtime, wages, leaves, paid time off, sick days, compensation, penalties or restitution, or any other form of remuneration or pay;

    - all claims for violation of a federal, state, or local statute or ordinance creating employment rights including but not limited to claims under the Fair Labor Standards Act ("FLSA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Worker Adjustment and Retraining Notification Act ("WARN"), the Equal Pay Act ("EPA"), the Americans With Disabilities Act ("ADA"), and the Family and Medical Leave Act ("FMLA"); and

    - any other claim under any federal, state, or local statute, constitution, regulation, rule, ordinance, or common law, arising out of and/or related to your application for employment with the Company, your employment with the Company, and/or the termination of your employment with the Company.

    **THE PARTIES HEREBY FOREVER WAIVE AND GIVE UP THE RIGHT TO HAVE A JUDGE OR A JURY DECIDE ANY COVERED CLAIMS.** Either party to this Agreement may make application to a court for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration.

1

**2. Class, Collective, and Representative Action Waiver:**

   a. <u>Waiver of Class, Collective, and Representative Actions</u>: To the maximum extent permitted by applicable law, the Parties agree that no Covered Claims may be initiated or maintained on a class action, collective action, or representative action basis either in court or arbitration. In California, however, this waiver does not extend to representative claims brought pursuant to California's Private Attorney General Act ("PAGA"). This means that neither party may serve or participate as a class, collective, or representative action member or representative, or receive any recovery from a class, collective, or representative action involving Covered Claims either in court or in arbitration. In addition, neither you nor the Company may participate as a plaintiff or claimant in a class, collective, or representative action to the extent that the action asserts Covered Claims against you or the Company. Nothing in this Agreement will preclude you or the Company from testifying or providing information in a class action, collective action or representative action. Claims brought pursuant to the PAGA will be litigated in Court, not arbitration.

   b. <u>Court to Decide Enforceability of the Waiver</u>: A court of competent jurisdiction, not an arbitrator, must resolve issues concerning the enforceability or validity of the class action, collective action, or representative action waiver set forth above.

   c. <u>No Prohibition On Filings Or Communications With Government Agencies</u>: Nothing in this Agreement shall prohibit you from filing a charge, complaint or claim, or communicating or cooperating with, providing information to, or participating in an investigation by the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the U.S. Department of Labor, the Occupational Safety and Health Administration, or any other federal, state or local administrative agency. To the extent a Covered Claim is not fully and finally resolved before the agency, it is subject to arbitration under this Agreement rather than any proceeding in court.

3. **Claims Not Covered by this Agreement.** The following claims shall not be covered by this Agreement:

   a. Claims for workers' compensation benefits (provided that claims for workers' compensation retaliation remain Covered Claims);

   b. Claims for unemployment compensation benefits;

   c. Claims for any relief asserted under or governed by the Employee Retirement Income Security Act of 1974 ("ERISA"); resolution of such claims will be governed by the terms of the applicable plan and applicable law;

   d. Claims that are subject to the exclusive jurisdiction of the National Labor Relations Board;

   e. Claims brought with the California Division of Labor Standards Enforcement while pending with the agency;

    f.   Claims brought pursuant to California's Private Attorney General Act ("PAGA"); and

    g.   Any claim that is expressly precluded from inclusion in this Arbitration Agreement by a governing federal statute.

**4. Arbitration Procedures**

    a.   The parties will use the Judicial Arbitration and Mediation Services ("JAMS"), subject to the JAMS Employment Arbitration Rules and Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Arbitration Rules"), or any successor rules, available at www.jamsadr.com or a copy will be provided upon request from Human Resources, unless those rules and/or procedures conflict with any express term of this Agreement, in which case this Agreement is controlling. To the extent JAMS is unavailable to process the arbitration, any successor arbitration forum will be used or, if there is no successor forum, the parties will select an alternative arbitrator or forum or one will be appointed by a court, and the arbitration will proceed under the rules most applicable to employment claims, except to the extent that such rules conflict with this Agreement, in which case this Agreement is controlling.

        To initiate an arbitration with JAMS, complete a Demand for Arbitration Form, available at: www.jamsadr.com/files/Uploads/Documents/JAMS_Arbitration_Demand.pdf. Please follow the instructions contained in the Demand for Arbitration Form and submit your completed Demand for Arbitration Form, along with a form showing that you served the Demand for Arbitration ("Proof of Service"), the entire contract containing the arbitration clause, and the requisite filing fee, to your local JAMS Resolution Center. JAMS Resolution Centers can be found on the JAMS website at: www.jamsadr.com/locations/

    b.   No arbitration under this Agreement shall be subject to the JAMS Class Action Procedures.

    c.   The arbitration will be heard by a single arbitrator at a location within 50 miles of where you worked for the Company in the U.S. at the time the claim arose, unless both parties agree otherwise. In the event you are a field-based employee, or work primarily from your residence, the residence at the time the claim arose shall be considered the work location for purposes of determining the location of the arbitration. In the event you are working for the Company outside of the U.S. on temporary assignment or is otherwise located outside the U.S. when the claim arises, you agree that the arbitration will take place in North Carolina.

    d.   Any Party shall have the right to file a motion to dismiss and/or a motion for summary judgment, which the arbitrator shall have the authority and obligation to decide by application of the Federal Rules of Civil Procedure governing such motions.

    e.   The arbitrator is authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in court, including attorneys' fees and costs. Thus, for example, you shall be entitled to recover attorney's fees and costs in any

      arbitration in which you assert and prevail on any statutory claims to the same extent as you could in court.

    f. The arbitrator shall issue a final and binding written award, subject to review on the grounds set forth in the Federal Arbitration Act ("FAA"). No award or decision by the arbitrator shall have any preclusive effect on issues or claims in any other arbitration or court proceeding, unless all of the parties in the other proceeding were also named parties in the arbitration in which the award or decision was issued.

**5. <u>Arbitration Fees and Costs</u>**

    a. In the event you file a claim under this Agreement, you will pay the arbitration provider's employee-designated filing fee, or the normal filing fee in the state or federal court in which the dispute arose, whichever is lowest, and the Company will pay any amount of the JAMS fee in excess of that amount.

    b. The Company will pay any other JAMS administrative fees, the arbitrator's fees, and any additional fees charged by the arbitral forum.

**6. <u>Other Provisions:</u>**

    a. <u>Time Limitation for Commencing Arbitration</u>: The same statute of limitations (the maximum time that parties have to initiate legal proceedings from the date a claim arises) that would have applied if the Covered Claim was filed in court will apply to any Covered Claim. Arbitration is to be commenced consistent with the JAMS arbitration rules and procedures, as applicable.

    b. <u>Agreement Survives Termination of Employment</u>: This Agreement will survive the termination of your employment with the Company. This Agreement supersedes any prior agreement between the Parties regarding the subject matter of dispute resolution of Covered Claims.

    c. <u>Construction and Severability</u>:

        i. Except as expressly provided elsewhere in this Agreement, any issue concerning the validity or enforceability of this Agreement, and any issue concerning the arbitrability of a particular issue or claim pursuant to this Agreement, must be resolved by the arbitrator, not the court. A court, not an arbitrator, must resolve issues concerning the enforceability or validity of the class action, collective action, or representative action waivers set forth above.

        ii. Except at stated below, if any part or provision of this Agreement is found to be void, voidable, or otherwise unenforceable, that part or provision shall be severed and such a finding will not affect the validity of the remainder of the Agreement, and all other parts and provisions remain in full force and effect. To the extent any claims (or portions of claims) are found to be required to proceed in court, all other Covered Claims (or portions of such claims), shall still be required to be arbitrated.

      iii. If any portion of the class action, collective action, or representative action waiver above is found to be void, voidable, or otherwise unenforceable, then the portion of the waiver found void or unenforceable shall be severed from this Agreement, and all other parts and provisions shall remain in full force and effect. In such a case, the claims (or portions of claims) found to be able to proceed on a class action, collective action, or representative action basis shall proceed in court and not in arbitration.

    d. <u>Governing Law</u>: This Agreement is governed by the FAA and, to the extent not inconsistent with or preempted by the FAA, by the laws of the state in which you last worked for the Company without regard to choice or conflicts of law rules. The Company's business, your employment with the Company, and this Agreement affect interstate commerce. The arbitrator is obligated to follow and apply the law applicable to any Covered Claims, and does not have the authority to enlarge upon or add to, subtract from or disregard, or otherwise alter the Parties' rights under such laws.

7. **Acknowledgements:** By accepting the terms of this Agreement, you acknowledge and represent that:

    a. you have carefully read this Agreement, understand the terms of this Agreement, and are entering into this Agreement voluntarily;

    b. you are not relying on any promises or representations by the Company except those contained in this Agreement;

    c. you are giving up the right to have Covered Claims decided by a court, judge or jury;

    d. you remain employed "at will," and for no definite period of time;

    e. these obligations are binding both upon you and your assigns, executors, administrators and legal representatives;

    f. you have been given a reasonable period of time in which to consider this Agreement; and

    g. you have been given the opportunity to discuss this Agreement with your own attorney or advisor if you wish to do so.

Agreed to by:

Shannon Kneece
_____
Employee's Printed Name


Shannon Kneece                                          03-09-2021
_____                               _____
Employee's Signature                                    Date

# ATTACHMENT 2

