IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Shannon Kneece, ) | |
| ) | Civil Action No. 6:22-2776-TMC-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Syneos Health US, Inc., DBA Syneos ) | |
| Health Commercial Services, LLC, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the defendant's motion to compel arbitration or, in the alternative, to dismiss pursuant to Federal Rule of Civil Procedure 12(b) (doc. 11). Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## I. BACKGROUND AND FACTUAL ALLEGATIONS

The plaintiff was employed by the defendant, a biopharmaceutical solutions organization, from March 22, 2021, to January 31, 2022 (doc. 1-1 ¶ 1). The plaintiff submits that the defendant markets specific medications from Janssen, also known as J&J or Johnson & Johnson, to local healthcare providers (*id.* ¶ 6). The plaintiff contends that she was employed as an immunology specialist assigned to the "Janssen BI Project" during the events in question (*id.*). Moreover, the plaintiff alleges that the defendant terminated her employment because she did not receive the COVID-19 vaccination due to her sincerely held religious beliefs (*id.* ¶¶ 8-38).

Jennifer Trucks ("Ms. Trucks"), the director of global human resources shared services for the defendant since March 2022, provided in a declaration that since November 2020, newly hired employees are given access to the defendant's Peoplefluent online

platform to review and electronically sign various employment-related documents as part of the hiring and onboarding process (doc. 11-2, Trucks 1st decl. ¶¶ 2, 5-6, 19). Employees are provided a Peoplefluent system generated email, which contains a link to create a username and password that is known only to the employee (*id.* ¶ 12). After the employees create their username and password, they are then asked to complete a task list of pre-onboarding documents (*id.* ¶ 13). Ms. Trucks submits that one of these documents is an arbitration agreement (*id.*). Further, Ms. Trucks asserts that the Peoplefluent system requires the employees to click on a link to view the full arbitration agreement before proceeding (*id.* ¶ 15). Once the employees click on that link, the website opens the full arbitration agreement for the employees to read in portable document format ("PDF") (*id.* ¶ 16). To proceed past the full arbitration agreement, the employees are required to click on a statement affirming that they both received and read the arbitration agreement (*id.* ¶ 17). Moreover, to sign the arbitration agreement, the employees are required to enter their first and last names and select a digital signature to use (*id.* ¶ 18). After taking these steps, the website prompts the employees to click on another button, which places their digital signature and the date on the agreement (*id.*). Ms. Trucks submits that agreeing to this arbitration agreement was an express condition of individuals commencing employment with the defendant (*id.* ¶ 14). Ms. Trucks further submits that the plaintiff was subjected to this onboarding process, completed these steps, and electronically signed the arbitration agreement (*id.* ¶ 19). Ms. Trucks attached to her declaration a copy of the agreement purportedly signed by the plaintiff, as well as a screenshot of the Peoplefluent system showing the arbitration agreement and reflecting "Task Accepted" by the plaintiff at 11:06 a.m. and "Task Completed" at 2:34 p.m. on March 9, 2021 (*id.* ¶¶ 19-20 & attachments 1, 2).

        The plaintiff, however, provided in a declaration that she never received, reviewed, or agreed to any arbitration agreement (doc. 16-1, Kneece decl. ¶¶ 8-9). The

2

plaintiff also provided declarations from four of the defendant's former employees (docs. 16-2, Padgett decl.; 16-3, O'Callaghan decl.; 16-4, Sellers decl.; 16-5, Royer 1st decl.). Specifically, Ms. Padgett was a district manager for the defendant from April 2020 to January 2022 and the plaintiff's direct supervisor (doc. 16-2, Padgett decl. ¶ 2). Ms. Padgett stated that she called the plaintiff to offer her the position as an immunology specialist and then notified human resources to begin the onboarding process (*id.* ¶¶ 3-4). Moreover, Ms. Padgett stated that she was obligated to review and fully comprehend all forms that employees were required to sign (*id.* ¶ 5). However, during the entirety of her employment in this position, she never saw any arbitration agreement, including the one at issue, nor was she told by the defendant that it required any new or existing employee to sign an arbitration agreement (*id.* ¶¶ 6-8). Additionally, Ms. O'Callaghan stated that she was a national project director on the Janssen BI Project and was employed by the defendant from January 2011 to January 2022 (doc. 16-3, O'Callaghan decl. ¶ 3). Like Ms. Padgett, Ms. O'Callaghan stated that she was obligated to review and fully comprehend all forms that employees were required to sign, but she never saw or signed any arbitration agreement and was never told that the defendant required any employee to have or sign an arbitration agreement (*id.* ¶¶ 5-8). Further, Ms. Sellers provided that she was a project director and employed by the defendant from 2014 through early 2022 (doc. 16-4, Sellers decl. ¶ 2). Ms. Sellers stated that as part of her job duties, she was required to review and fully comprehend all forms that employees were required to sign and that in 2020 and 2021 alone, she hired 56 employees (*id.* ¶ 5). However, Ms. Sellers never saw any arbitration agreement or a digital signature like the one represented in the arbitration agreement that the plaintiff purportedly signed (*id.* ¶¶ 3, 10). Ms. Sellers was also never told that the defendant required any new or existing employee to sign an arbitration agreement (*id.* ¶ 6). Additionally, Ms. Royer, a clinical account specialist for the defendant from June 2021 until January 2022, provided in her declaration that she completed the onboarding process on

3

Peoplefluent but never saw, received, or signed any arbitration agreement (doc. 16-5, Royer 1st decl. ¶¶ 3-8).

Ms. Trucks subsequently provided a second declaration, in which she stated that Ms. Padgett, Ms. O'Callaghan, and Ms. Sellers were hired before the defendant rolled out its arbitration agreement and would not have been presented with the agreement at any point during their employment (doc. 17-1, Trucks 2nd decl. ¶ 5). Moreover, Ms. Trucks stated that these declarants would have never seen certain personnel documents, including the arbitration agreement at issue (*id.* ¶ 6). Ms. Trucks also stated that Ms. Royer did in fact sign the arbitration agreement and attached to her declaration a copy of the agreement purportedly signed by Ms. Royer (*id.* ¶ 4 & exhibit A-1).

Nevertheless, Ms. Royer also provided a second declaration, in which she stated that she was never given nor signed any arbitration agreement, including the one attached to Ms. Trucks' second declaration (doc. 21-1, Royer 2nd decl. ¶ 4). Ms. Royer submitted that the digital signature on that agreement does not reflect the digital signature that she used while working for the defendant (*id.* ¶¶ 5-7). Ms. Royer also provided that the date format in the arbitration agreement attached to Ms. Trucks' second declaration differs from the format that accompanied the digital signature that she used (*id.* ¶ 7). Ms. Royer attached to her declaration another form with a different digital signature of her name, which she stated was the digital signature that she used when signing documents for the defendant (*id.* ¶¶ 5-7 & exhibit 1). This form also reflects a different date format than seen in the arbitration agreement attached to Ms. Trucks' second declaration (*id.*).

After her employment termination, the plaintiff filed a complaint in the Greenville County Court of Common Pleas on July 19, 2022, alleging claims for failure to accommodate in violation of Title VII of the Civil Rights Act of 1964, as amended, and violation of the South Carolina Payment of Wages Act (doc. 1-1). The defendant removed the matter to this court on August 19, 2022 (doc. 1). On September 16, 2022, the

defendant filed the instant motion to compel arbitration or, in the alternative, to dismiss (doc. 11). The plaintiff filed a response on October 21, 2021 (doc. 16), and the defendant filed a reply on October 28, 2022 (doc. 17). With leave from the court, the plaintiff filed a sur-reply on November 14, 2022 (doc. 21). On January 18, 2023, the undersigned issued a text order directing the parties to file briefing in regard to proceeding to trial on the motion to compel arbitration in light of 9 U.S.C. § 4 and *Berkeley County School District v. Hub International Limited*, 944 F.3d 255 (4th Cir. 2019), should the undersigned recommend to the district court that genuine issues of material fact remain as to the making of an arbitration agreement (doc. 22). After receiving one extension of time, the parties filed briefs on February 8, 2023 (docs. 26; 27). Moreover, both parties filed response briefs on February 15, 2023 (docs. 28; 29). Accordingly, this matter is now ripe for review.

## II. APPLICABLE LAW AND ANALYSIS

Under the Federal Arbitration Act ("FAA"),

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA further provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4. Section 4 also states that, when presented with such a petition, "the court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* On the other hand, if the "making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof" (the "Trial Provision"). *Id.*

5

Notably, "the Supreme Court has consistently encouraged a 'healthy regard for the federal policy favoring arbitration.'" *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). However, "even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002) (citation and internal quotation marks omitted); *see also Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021) ("It must be remembered that mandatory arbitration is not the default form of dispute resolution but rather is permitted only when the parties agree to it.").

The Court of Appeals for the Fourth Circuit has explained that when the making of the arbitration agreement is in issue, "the district court must employ the summary judgment standard as a gatekeeper, so a trial occurs only if there are genuine issues of material fact." *Rowland*, 993 F.3d at 258 (citations and internal quotation marks omitted); *see also Berkeley*, 944 F.3d at 234 (noting that when deciding whether the parties have formed an agreement to arbitrate, "the court is obligated to conduct a trial under the Trial Provision when a party unequivocally denies that an arbitration agreement exists and show[s] sufficient facts in support thereof.") (citation and internal quotation marks omitted). "In applying that standard, the court is entitled to consider materials other than the complaint and its supporting documents." *Berkeley*, 944 F.3d at 234. The defendant bears the "burden of establishing the existence of a binding contract to arbitrate the dispute." *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 456 (4th Cir. 2017) (citation omitted). When deciding whether an agreement to arbitrate was formed, courts should apply ordinary state-law principles that govern the formation of contracts. *Rowland*, 993 F.3d at 257.

It appears that both parties agree that South Carolina law governs the formation of the arbitration agreement at issue (*see* docs. 26 at 2; 29 at 1-4). "Under South Carolina law, a contract is formed between two parties when there is, inter alia, 'a mutual manifestation of assent to [its] terms.'" *Berkeley*, 944 F.3d at 236 (quoting *Edens v. Laurel*

6

*Hill, Inc.*, 247 S.E.2d 434, 436 (S.C. 1978)); *see also Stevens & Wilkinson of S.C., Inc. v. City of Columbia*, 762 S.E.2d 696, 701 (S.C. 2014) ("A valid and enforceable contract requires a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement.") (emphasis in original). "Such mutual manifestation ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party." *Id.* (citation and internal quotation marks omitted); *see also Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161, 166 (S.C. 2003) ("The necessary elements of a contract are an offer, acceptance, and valuable consideration.").

The plaintiff argues that there are genuine issues of material fact regarding the formation of the arbitration agreement. The defendant, however, contends that the plaintiff signed the arbitration agreement on the Peoplefluent platform and has provided in support of its argument two declarations from Ms. Trucks,[1] a copy of the agreement allegedly signed by the plaintiff, and a screenshot of Peoplefluent showing that the task was completed by the plaintiff on March 9, 2021. The defendant submits that the plaintiff's declaration merely calls into question her recollection of signing the agreement and that only the plaintiff could have completed the task because she created her own password before she signed the agreement. However, the plaintiff contends that she never saw or signed the agreement and has provided a declaration from Ms. Royer in support thereof. As set out above, Ms. Royer was hired only three months after the plaintiff in 2021; she completed the onboarding process on Peoplefluent like the plaintiff; but she testified that she never saw, received, or signed any arbitration agreement. Moreover, Ms. Royer submitted that the arbitration agreement that was attached to Ms. Trucks' declaration did

---

[1] The plaintiff argues that the undersigned should not consider Ms. Trucks' declarations because she was not hired until March 2022, approximately two months after the plaintiff's employment with the defendant ended (doc. 16 at 3). The plaintiff asserts that Ms. Trucks' declarations are therefore inadmissible because she has no first-hand personal knowledge of the defendant's practices in 2021 (*id.*). However, the undersigned has considered her declarations at this time, as Ms. Trucks provided in her declaration that her statements were true based on either personal knowledge or based on the defendant's business records, which were "created and maintained by [the defendant] in the ordinary course of business at or near the times of the acts, conditions, or events recorded therein, and of which [she is] an authorized custodian of records" (doc. 11-2, Trucks 1st decl. ¶ 1).

not contain the digital signature that she used while working for the defendant and had a different date format. Further, Ms. Sellers provided that she never saw a digital signature like the one represented in the arbitration agreement that the plaintiff purportedly signed. Based on the foregoing, the undersigned finds that a genuine issue of material fact remains regarding the formation of the arbitration agreement and therefore recommends that the district court proceed to trial pursuant to Section 4 of the FAA. *See, e.g., Gordon v. TBC Retail Grp., Inc.*, C/A No. 2:14-cv-03365-DCN, 2016 WL 4247738, at *5-8 (D.S.C. Aug. 11, 2016) (finding that certain plaintiffs could not be compelled to arbitrate their dispute when the defendant produced printouts showing either a screenshot of a confirmation page indicating that the plaintiffs acknowledged the agreement or a typed name in the agreement's signature block indicating the plaintiffs signed the agreement, but the plaintiffs flatly denied signing the agreement, claimed that someone else must have signed it for them, and some stated in declarations that their supervisors often filled out electronic forms for them); *compare Chorley Enters., Inc. v. Dickey's Barbeque Rests., Inc.*, 807 F.3d 553, 563-64 (4th Cir. 2015) (finding there was no genuine issue of material fact when the parties did not dispute facts but rather interpretations of certain contractual provisions in the arbitration agreement). Accordingly, the undersigned further recommends that the defendant's request for sanctions based on the plaintiff's failure to arbitrate (doc. 11-1 at 10-12) be denied. The parties agree that if the undersigned recommends that this matter proceed to trial, they wish to have a period of additional discovery on this issue, to include (1) ten interrogatories and five requests for production; (2) three depositions, limited to two hours each; and (3) one expert witness (docs. 27 at 5; 28 at 1-2). Should the district court adopt the recommendation herein, the undersigned further recommends that the district court permit the parties to engage in this limited discovery.[2]

---

[2] The plaintiff has also included in her briefing a proposed amended scheduling order (doc. 26-1). Should the district court adopt the undersigned's recommendation, the undersigned further recommends that the district court order the parties to file a joint proposed amended scheduling order within seven days after the district court's ruling on the defendant's instant motion.

### III. CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the undersigned recommends that the district court deny the defendant's motion to compel arbitration or, in the alternative, to dismiss (doc. 11) at this time and proceed to trial regarding formation of the arbitration agreement pursuant to Section 4 of the FAA. Should the district court adopt this recommendation, the undersigned further recommends that the defendant's request for sanctions be denied and the parties be permitted to engage in the limited discovery set forth above.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

February 27, 2023
Greenville, South Carolina

**The attention of the parties is directed to the important notice on the next page.**

***Notice of Right to File Objections to Report and Recommendation***

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 250 East North Street, Suite 2300
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).