IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| SHANNON KNEECE, <br><br> Plaintiff, <br><br> v. <br><br> SYNEOS HEALTH US, INC. D.B.A SYNEOS HEALTH COMMERCIAL SERVICES, LLC, <br><br> Defendant. | Case No.: 6:22-cv-02776-TMC-KFM |

**DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

Defendant Syneos Health US, Inc. ("Defendant") hereby submits these Objections to the United States Magistrate Judge's Report and Recommendation ("R&R") (ECF No. 31), pursuant to 28 U.S.C. § 626(b) and Fed. R. Civ. P. 72(b).

**I.   Introduction and Objection**

On February 27, 2023, the Magistrate Judge filed an R&R related to Defendant's pending Motion to Compel Arbitration. The R&R ends with a recommendation that Defendant's Motion be denied and that the matter should proceed to trial on the issue of the formation of the Mutual Arbitration Agreement (the "Agreement").

Defendant objects to the R&R because there are no disputes of material fact as to the existence of the Agreement or Plaintiff's electronic signature thereof. Thus, Defendant's Motion should be granted.

1

## II. Discussion

### A. The Court Should Grant Defendant's Motion

This Court should grant Defendant's Motion to Compel Arbitration because Defendant has submitted irrefutable proof that Plaintiff electronically signed the Agreement at the beginning of her employment. The signed and fully executed Agreement has been submitted to the Court for enforcement. (ECF No. 11-2, Trucks 1st Decl. ¶¶ 19-20 & Attachments 1, 2) Specifically, Defendant has set forth evidence showing the following:

1) Beginning in November 2020, Defendant began to use Peoplefluent – an online platform to onboard new employees (ECF No. 11-2 ¶¶ 2, 5-6, 19);

2) Plaintiff was hired in 2021 – after Defendant began to use the Peoplefluent platform (ECF No. 1-1 ¶ 1);

3) Peoplefluent generated a unique email received by each user (Plaintiff) (ECF No. 11-2 ¶ 12);

4) The email prompted each user (Plaintiff) to manually create a unique username and password known *only* to the user (Plaintiff) (ECF No. 11-2 ¶ 12);

5) Once the username and profile were manually created by the user (Plaintiff), the user (Plaintiff) was provided a list of tasks to complete (ECF No. 11-2 ¶ 13);

6) Review and sign the Agreement was one of the assigned tasked (ECF No. 11-2 ¶ 13);

7) To complete the task of signing the Agreement, the user (Plaintiff) was required to manually click a button to open a full version of the Agreement for review; the user (Plaintiff) then manually clicked a statement affirming she both received and read the Agreement (ECF No. 11-2 ¶¶ 15-17);

8) After review and affirmation, the user (Plaintiff) manually signed the Agreement by physically entering their first and last name and then manually selected a digital signature to sign the Agreement and add a date the executed Agreement. (ECF No. 11-2 ¶ 18)

9) As a result, a signed Agreement was executed by Plaintiff. (ECF No. 11-2, Trucks 1st Decl. ¶¶ 19-20 & Attachments 1, 2)

Defendant has submitted undeniable proof that Plaintiff completed the task of electronically signing the Agreement at 2:34 p.m. on March 9, 2021. (ECF No. 11-2 ¶¶ 19-20 & Attachments 1, 2 ("Task Completed"). Further, Defendant's evidence establishes that *only Plaintiff* could have completed the task of signing the Agreement, as she created a unique password, known only to her, as part of the on-line process before completing the task of signing the Agreement. (ECF No. 11-2, Trucks 1st Decl. ¶¶ 12-14, 19.) Each step in the process to reach "Task Completion" required the Plaintiff to take manual steps on her computer. Defendant has submitted to the Court a copy of the fully executed Agreement signed electronically by Plaintiff. (ECF No. 11-2, Trucks 1st Decl. ¶¶ 19-20 & Attachments 1, 2). The completion of these tasks and the signing of the Agreement were express conditions of individuals commencing employment with the Defendant during the period of time in which Plaintiff was hired. (ECF No. 11-2 ¶ 14). The steps above comport with electronic signatory laws in South Carolina and create no doubt that Plaintiff fully executed and signed the Agreement in question. *See* S.C. Code Ann. § 26-6-70 (2007) (providing an electronic signature has the same force and effect as a signature in writing).

Despite the irrefutable proof presented, Plaintiff denies the existence of the Agreement. However, her denial of the existence of the Agreement amounts merely to Plaintiff not recalling having received or signing the Agreement. The Agreement clearly exists and has been presented

the Court. To deny Defendant's Motion on the sole basis that Plaintiff allegedly does not remember signing the Agreement flies in the face of the case law of this Court and does not create a genuine dispute of facts. *See Snow v. Genesis Eldercare Rehab. Servs.*, LLC, No. CV 3:22-1794-SAL, 2023 WL 371085, at *3 (D.S.C. Jan. 24, 2023) (citing *Gordon v. TBC Retail Grp.*, No. 2:14-cv-3365-DCN, 2016 WL 4247738 (D.S.C. Aug. 11, 2016)) (denying the plaintiff's objections to the R&R because her case fell with *Gordon*'s holding "that not remembering signing an agreement does not create a genuine dispute of fact as to the authenticity of a signature on an Arbitration Agreement").

To support her position, Plaintiff submits–and the R&R improperly relies heavily upon– declarations submitted by four of Defendant's former employees. (ECF Nos. 16-2, 16-3, 16-4, 16-5.) The declarations are not reliable and do not provide firsthand knowledge of Plaintiff's Agreement or support her position. The declarations are submitted by a) one former employee (Royer) who executed an identical Mutual Arbitration Agreement executed in the same manner as Plaintiff – providing direct support that the Agreement was sent to new hires and was executed in the Peoplefluent system like Plaintiff during this time period – but not providing any independent knowledge of Plaintiff's signed Agreement or the underlying Peoplefluent process (ECF No. 17-1, ¶ 4 & Ex. A1 - Royer Mutual Arbitration Agreement) and b) three disgruntled former employees (one of which has her own pending lawsuit (*see Scott, et al. v. Syneos Health, LLC*, Case No. 5:22-cv-00163 (W.D.N.C. Oct. 24, 2022), and two others who have pending charges against the Company).

Further and more pointedly, the declarations submitted by Plaintiff are completely irrelevant to the instant issue of Plaintiff's electronically signed Agreement because *none of the declarants have first-hand knowledge regarding Plaintiff Kneece's signing of her Agreement or*

4

*first-hand knowledge regarding the Peoplefluent onboarding process*. The declarants' testimonies have no bearing on whether *Plaintiff* did, in fact, sign her individual Agreement. As such, their testimony is irrelevant to the question at issue – did Plaintiff Kneece electronically sign her agreement. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Therefore, the declarations should not be considered by this Court when deciding Defendant's Motion to Compel Arbitration. *See, e.g., United States v. McClellan*, 44 F.4th 200, 206 (4th Cir. 2022) (quoting *Maryland Highways Contractors Ass'n, Inc. v. State of Md.*, 933 F.2d 1246, 1251 (4th Cir. 1991)) ("'[E]vidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment.'").

To the extent considered, the declarations do not advance Plaintiff's argument that she herself did not acknowledge the Agreement. Instead, the declarations do nothing more than confirm each declarant had no knowledge of Plaintiff signing the Agreement in question and no knowledge of the full breadth of the onboarding documents provided to Plaintiff through Peoplefluent. (ECF No. 17-1 ¶ 5) This is unsurprising as Defendant admits and affirmatively asserts that, since 2020, certain onboarding documents required to be executed by new hires were no longer the responsibility of new hires' hiring managers, supervisors and other members of Human Resources, but were instead handled by the Peoplefluent onboarding platform. (ECF No. 11-2 ¶¶ 2, 5-6, 19); (ECF No. 17-1 ¶ 6 "Certain personnel documents, including the Mutual Arbitration Agreement, would not have been reviewed by Shannon Kneece's individual supervisor Jennifer Padgett, or by Janet O'Callahan or Summer Sellers."). The declarants had no reason to have, nor were they expected to have, inside knowledge of the Peoplefluent onboarding process, including knowledge of all of the documents required during onboarding through the Peoplefluent platform. (ECF No. 17-1 ¶¶ 5, 6) In fact, affiant Padgett admits in her affidavit that after she called

Plaintiff to offer her a position of employment she then notified Human Resources that it was time to begin the onboarding process. (ECF No. 16-2 ¶ 3-4) (Padgett states that she called the plaintiff to offer her the position as an immunology specialist and then notified human resources to begin the onboarding process). Human Resources, *not* Padgett, then proceeded with the onboarding of Plaintiff, which included the execution of the Agreement and all new hire documents through Peoplefluent. (ECF No. 17-1 ¶ 6 "Certain personnel documents, including the Mutual Arbitration Agreement, would not have been reviewed by Shannon Kneece's individual supervisor Jennifer Padgett, or by Janet O'Callaghan or Summer Sellers.").

    Because arbitration under the Federal Arbitration Act (FAA) rests entirely upon consent, it is always up to the Court to determine if the parties have an agreement to arbitrate. *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 296, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010). Whether the parties have formed an agreement to arbitrate is determined by applying South Carolina contract law. *Wilson v. Willis*, 426 S.C. 326, 336, 827 S.E.2d 167, 173 (2019). An employer may conclusively prove an employee has actual notice of the terms of an agreement if the recipient signed an acknowledgment form stating she received the agreement and promised to review it. *See Towles v. United Healthcare Corp.*, 338 S.C. 29, 39-40, 524 S.E.2d 839, 845 (Ct. App. 1999). This is also true when the employee has electronically signed the agreement. *See* S.C. Code Ann. § 26-6-70 (2007) (providing an electronic signature has the same force and effect as a signature in writing). Defendant has provided irrefutable proof in this case that Plaintiff (1) had notice of the Agreement, (2) *manually* clicked a button to open a full version of the Agreement for review, and (3) the Plaintiff then *manually* clicked a statement affirming she both received and read the arbitration agreement (ECF No. 11-2 ¶¶ 15-17). Defendant further provided proof that Plaintiff *manually* signed the Agreement in yet another *manual* step to produce the electronic

signature attached to the executed Agreement. (ECF No. 11-2 ¶ 18) *See* S.C. Code Ann. § 26-6-70 (2007) (providing an electronic signature has the same force and effect as a signature in writing). Defendant has provided incontestable proof that Plaintiff took steps only she could have taken to manually sign and affix her signature to the Agreement which has been submitted to the Court. (ECF No. 11-2, Trucks 1st Decl. ¶¶ 12, 19-20 & Attachments 1, 2).

> Courts judge online transactions by the same law that has long governed contracts memorialized by ink and paper. Today, terms such as "click wrap" and "browse wrap" seem less exotic to our so-called modern ears than "foolscap," the standard term for legal paper a century ago. For many good reasons, the law in most instances lags behind technology, and the challenge for courts is how to apply old law to new circumstances. The "old" law controlling here includes *Towles*, and we have no difficulty transplanting the principles of that well-reasoned decision to the new circumstances of this case, even if the legally binding agreement was formed in cyberspace rather than face to face across a conference table. As fewer contracts are presented on paper and in person, the risk rises that the frontiers of online transactions may cross borders established by traditional contract principles. Still, "[c]ourts are not licensed to ignore the old chestnuts—cases that remind us that (1) certain formalities are required for a contract to be formed . . . and (2) when the formalities are met, a contract it does make . . . ." *Rowland v. Sandy Morris Fin. & Est. Plan. Servs.,* LLC, 993 F.3d 253, 260 (4th Cir. 2021) ("The electronic age has not made the formalities of contract less crucial, but more so . . . .").

*Lampo v. Amedisys Holding, LLC*, 437 S.C. 236, 244, 877 S.E.2d 486, 490-91 (Ct. App. 2022) (internal citations omitted).

Without the irrelevant and inadmissible declarations which contain no actual knowledge of Plaintiff's individual Agreement, Plaintiff has no argument left to challenge her Mutual Arbitration Agreement other than her lack of memory, which is not enough to overcome the unassailable proof submitted by Defendant that the Mutual Arbitration Agreement at issue does, in fact, exist and was signed by the Plaintiff.

Plaintiff has not submitted any documents or testimony into the record that the fully executed Agreement electronically signed by Plaintiff and submitted by Defendant was fraudulent.

Instead, the Plaintiff relies solely on Plaintiff's memory lapse and on irrelevant declarations by other former employees with no direct knowledge of what Plaintiff did or did not do to electronically sign her individual Agreement or any direct knowledge of the electronic onboarding process and document execution process utilized by Plaintiff through Peoplefluent. *See Snow v. Genesis Eldercare Rehab. Servs.*, LLC, No. CV 3:22-1794-SAL, 2023 WL 371085, at *3 (D.S.C. Jan. 24, 2023) (citing *Gordon v. TBC Retail Grp.*, No. 2:14-cv-3365-DCN, 2016 WL 4247738 (D.S.C. Aug. 11, 2016) (denying the plaintiff's objections to the R&R because her case fell with *Gordon*'s holding "that not remembering signing an agreement does not create a genuine dispute of fact as to the authenticity of a signature on an Arbitration Agreement"). This is simply not enough to overcome a signed and fully executed Agreement. (ECF No. 11-2, Trucks 1st Decl. ¶¶ 19-20 & Attachments 1, 2)

For these reasons and those set forth in Defendant's prior briefing, the Court should not adopt the R&R, but should instead grant Defendant's Motion to Compel Arbitration.

> **B. In the Alternative, if the Court Does Not Grant Defendant's Motion, Limited Discovery Should Be Ordered Prior to Trial on the Issue of Creation of the Agreement**

In the alternative, should the Court decide not to grant Defendant's Motion (to which Defendant argues above) and instead orders a trial on the issue of the creation of the Agreement, Defendant requests limited discovery, including an expert witness. On this point, Defendant intends to retain a computer forensics expert to provide testimony regarding Defendant's onboarding system and electronic signature process. Defendant will also seek forensic copies of Plaintiff's personal electronic devices on which she completed her employment onboarding, as well as Plaintiff's personal emails regarding the onboarding process. This evidence is warranted, as Defendant should be allowed to challenge Plaintiff's claimed denial of having electronically

signed the Agreement. Further, any reliance on the declarations submitted should be allowed to be challenged based on relevance and bias.

**III.	Conclusion**

For the reasons stated above, the Court should not adopt the R&R and should grant Defendant's Motion to Compel Arbitration.

Dated this 13th day of March 2023.

Respectfully submitted,

s/Ashley P. Cuttino
Ashley P. Cuttino, Fed. I. D. # 9215
Luci L. Nelson, Fed. I.D. # 10341
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
300 North Main Street, Suite 500
Greenville, SC  29601
864-271-1300
864-235-8806
ashley.cuttino@ogletree.com
luci.nelson@ogletree.com

Attorneys for Defendant Syneos Health US, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").

John G. Reckenbeil
Law Office of John Reckenbeil, LLC
P.O. Box 314
Mauldin, SC 29662
john@johnreckenbeillaw.com

s/Ashley P. Cuttino
Ashley P. Cuttino