IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Shannon Kneece, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 6:22-cv-2776-TMC |
| v. ) | |
| ) | **ORDER** |
| ) | |
| Syneos Health US, Inc., *d/b/a* ) | |
| *Syneos Health Commercial,* ) | |
| *Services, LLC*, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff brought this action in state court against Defendant, her former employer, alleging that Defendant failed to reasonably accommodate her sincerely held religious beliefs in violation of Title VII and violated the South Carolina Payment of Wages Act. (ECF No. 1-1). Defendant subsequently removed the action to federal court. (ECF No. 1). In accordance with 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), this matter was referred to a magistrate judge for all pretrial proceedings.

Now before the court is the magistrate judge's Report and Recommendation ("Report") (ECF No. 31) recommending that the court deny Defendant's motion to compel arbitration or, in the alternative, to dismiss pursuant to Federal Rule of Civil Procedure 12(b) and proceed to trial regarding formation of the arbitration

1

agreement pursuant to Section 4 of the Federal Arbitration Act. (ECF No. 11). Defendant filed objections to the Report (ECF No. 32), and Plaintiff submitted a reply (ECF No. 34).

### I. Facts

The court adopts and incorporates the magistrate judge's thorough recitation of the relevant facts (ECF No. 31 at 1–5) to which neither party objects. Briefly, Plaintiff began her employment with Defendant on March 22, 2021. (ECF No. 1-1 at 1). Jennifer Trucks, Defendant's director of global human resources, attests that since November 2020, newly hired employees are given access to Defendant's Peoplefluent online platform to review and electronically sign employment-related documents during the hiring and "onboarding" process. (ECF No. 11-2 at 2–3). Employees create a username and password known only to them to access the Peoplefluent system. *Id*. at 5. The system prompts the new employees to complete a number of "pre-onboarding documents" including an arbitration agreement. *Id*. According to Trucks, the Peoplefluent system requires the employees to click on a link to view the full arbitration agreement before proceeding. *Id*. To proceed past the full arbitration agreement, the employees must click on a statement affirming that they both received and read the arbitration agreement. *Id*. Then, to sign the arbitration agreement, the employees must enter their first and last names, select a digital signature, and place the signature and date on the agreement with a final click.

*Id*. According to Trucks, Plaintiff, who was hired in March 2021, participated in this onboarding process and electronically signed the arbitration agreement. *Id*. Defendant submitted a copy of the agreement purportedly signed by Plaintiff and a screenshot of the Peoplefluent system showing the arbitration agreement and reflecting "Task Accepted" by Plaintiff at 11:06 a.m. and "Task Completed" at 2:34 p.m. on March 9, 2021. *Id*. at 9–15.

Plaintiff, however, denies that she ever received, reviewed, or agreed to any arbitration agreement, (ECF No. 16-1, at 3), and offers the declarations of four of Defendant's former employees:

▪ Ms. Padgett, district manager from April 2020 to January 2022 and Plaintiff's direct supervisor (ECF No. 16-2 at 1), indicates that she was obligated to review all forms that employees were required to sign, *see id*., but that she never saw any arbitration agreement during her employment, including the one Plaintiff purportedly signed. She also states that she was never told by Defendant that new or existing employees were required to sign an arbitration agreement. *Id*. at 1–2.

▪ Ms. O'Callaghan, national project director on the Janssen BI Project to which Plaintiff was assigned, attests, similarly to Padgett, that she was required to review all forms that employees were required to sign but never saw or signed any arbitration agreement and was never informed that Defendant required employees to sign an arbitration agreement. (ECF No. 16-3).

▪ Ms. Sellers, a project director employed by Defendant until 2022, likewise claimed her duties included reviewing all forms that employees were required to sign and that, despite hiring 56 employees in 2020 and 2021, she never saw any arbitration agreement or a digital signature like the one Defendant claims Plaintiff used to sign the arbitration agreement. Sellers further denies ever being instructed that any new or existing employee was required to sign an arbitration agreement. (ECF No. 16-4).

3

- Ms. Royer, hired in June 2021 as a clinical account specialist, states that she completed the onboarding process on Peoplefluent but never saw, received, or signed any arbitration agreement. (ECF No. 16-5).

In response, Trucks declares that Padgett, O'Callaghan, and Sellers were hired before Defendant began using the arbitration agreement and, therefore, would not have been presented with the agreement at any point during their employment. (ECF No. 17-1). Additionally, Trucks states that none of these former employees would have seen personnel documents like the arbitration agreement at issue. *Id*. As for Royer, Trucks attests that Royer did in fact sign the arbitration agreement, and Defendant offers a copy of the agreement purportedly signed by Royer using the Peoplefluent system. *Id*. at 4–8. Royer, however, specifically denies that she was ever presented with the arbitration agreement presented by Defendant purportedly showing her digital signature. (ECF No. 21-1). Furthermore, Royer indicates that the digital signature and date format presented by Defendant is different than the digital signature that she used during her employment by Defendant. *Id*. at 6.

## II. FAA

The FAA embodies a federal policy favoring arbitration. *See Drews Dist., Inc. v. Silicon Gaming Inc.*, 245 F.3d 347, 349 (4th Cir. 2001). Pursuant to Section 2 of the FAA, arbitration clauses in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and "[a] party aggrieved by

4

the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." Courts "will compel arbitration under Section 4 [of the FAA] if: (i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement." *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553,563 (4th Cir. 2015). Thus, "even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002) (internal quotation marks omitted). The question of "[w]hether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Id.*; *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Rota-Mclarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 699 (4th Cir. 2012) ("The question of whether an enforceable arbitration agreement exists . . . is a matter of contract interpretation governed by state law.").

In this case, neither party disputes that South Carolina law governs whether an underlying agreement exists. (ECF No. 31 at 6). As the magistrate judge correctly observed, *id.* at 6–7, a contract is formed under South Carolina law "between two parties when there is, inter alia, 'a mutual manifestation of assent to [its] terms.'" *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 236 (4th Cir.

5

2019) (citing *Edens v. Laurel Hill, Inc.*, 247 S.E.2d 434, 436 (S.C. 1978) (internal quotation marks omitted)). "Such mutual manifestation ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party." *Id.* (internal citations omitted).

The FAA provides that, "upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. If, however, the "making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." *Id.*; *see Berkeley Cnty. Sch. Dist.*, 944 F.3d at 234 (referring to this portion of 9 U.S.C. § 4 as the "Trial Provision"). That is, "the court is obliged to conduct a trial under the Trial Provision when a party unequivocally denies that an arbitration agreement exists, and show[s] sufficient facts in support thereof." *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 234 (internal quotation marks omitted). "To decide whether sufficient facts support a party's denial of an agreement to arbitrate, the district court is obliged to employ a standard such as the summary judgment test." *Id.* (internal quotation marks omitted). So, "[i]f the record reveals a genuine dispute of material fact regarding the existence of an agreement to arbitrate, the court shall proceed summarily and conduct a trial on the motion to compel arbitration." *Id.* (internal quotation marks omitted).

### III. Report and Recommendation

The magistrate judge concluded that genuine issues of material fact exist as to the formation of an arbitration agreement. (ECF No. 31 at 7–8). The magistrate judge's analysis and conclusions are, in pertinent part, summed up in the following passage from the Report:

> The plaintiff argues that there are genuine issues of material fact regarding the formation of the arbitration agreement. The defendant, however, contends that the plaintiff signed the arbitration agreement on the Peoplefluent platform and has provided in support of its argument two declarations from Ms. Trucks, a copy of the agreement allegedly signed by the plaintiff, and a screenshot of Peoplefluent showing that the task was completed by the plaintiff on March 9, 2021. The defendant submits that the plaintiff's declaration merely calls into question her recollection of signing the agreement and that only the plaintiff could have completed the task because she created her own password before she signed the agreement. However, the plaintiff contends that she never saw or signed the agreement and has provided a declaration from Ms. Royer in support thereof. As set out above, Ms. Royer was hired only three months after the plaintiff in 2021; she completed the onboarding process on Peoplefluent like the plaintiff; but she testified that she never saw, received, or signed any arbitration agreement. Moreover, Ms. Royer submitted that the arbitration agreement that was attached to Ms. Trucks' declaration did not contain the digital signature that she used while working for the defendant and had a different date format. Further, Ms. Sellers provided that she never saw a digital signature like the one represented in the arbitration agreement that the plaintiff purportedly signed. Based on the foregoing, the undersigned finds that a genuine issue of material fact remains regarding the formation of the arbitration agreement and therefore recommends that the district court proceed to trial pursuant to Section 4 of the FAA. *See, e.g., Gordon v. TBC Retail Grp., Inc.*, C/A No. 2:14-cv-03365-DCN, 2016 WL 4247738, at *5-8 (D.S.C. Aug. 11, 2016) (finding that certain plaintiffs could not be compelled to arbitrate their dispute when the defendant produced printouts showing either a screenshot of a confirmation page indicating that the plaintiffs

> acknowledged the agreement or a typed name in the agreement's signature block indicating the plaintiffs signed the agreement, but the plaintiffs flatly denied signing the agreement, claimed that someone else must have signed it for them, and some stated in declarations that their supervisors often filled out electronic forms for them); *compare Chorley Enters., Inc. v. Dickey's Barbeque Rests., Inc.*, 807 F.3d 553, 563-64 (4th Cir. 2015) (finding there was no genuine issue of material fact when the parties did not dispute facts but rather interpretations of certain contractual provisions in the arbitration agreement). *Id.* (internal footnote omitted).

*Id.*

## IV. District Court Review of the Report

The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). Thus, "[t]o trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Elijah*, 66 F.4th at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory'

objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017); *see also Elijah*, 66 F.4th at 460 (noting that "[i]f a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only"). Furthermore, in the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation. *Greenspan v. Brothers Prop. Corp.*, 103 F. Supp. 3d 734, 737 (D.S.C. 2015) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)).

## V. Discussion

In its objections to the Report (ECF No. 32), Defendant repeats for the court much of the argument it previously but unsuccessfully offered to the magistrate judge. Defendant reiterates the factual support it offered in support of its motion, *id*. at 2–3, and challenges the magistrate judge's assessment of whether Plaintiff has created a genuine factual issue in light of those facts, *id*. at 3–8. Defendant does not suggest, however, that the magistrate judge failed to consider or overlooked any of its evidence.

Defendant's first argument is that Plaintiff's "denial of the existence of the Agreement amounts merely to Plaintiff not recalling having received or signing the Agreement," *id*. at 3, and that "[t]o deny Defendant's Motion on the sole basis that Plaintiff allegedly does not remember signing the Agreement flies in the face of the

9

case law of this Court and does not create a genuine dispute of facts," *id*. at 4 (citing *Snow v. Genesis Eldercare Rehab. Servs., LLC*, No. 3:22-cv-1794-SAL, 2023 WL 371085, at *3 (D.S.C. Jan. 24, 2023)). Indeed, "the party seeking a jury trial must make an unequivocal denial that an arbitration agreement exists—and must also show sufficient facts in support." *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015). Plaintiff's position is not merely that she does not remember the arbitration agreement; rather, her declaration reflects the unequivocal denial of the existence of an arbitration agreement. (ECF No. 16-1). She remembers the onboarding process and denies, in no uncertain terms, that she ever saw or signed an arbitration agreement or that she was ever given a task during onboarding requiring her to complete an arbitration agreement. *Id*. The court overrules this objection.

Next, Defendant challenges the Report on the basis that the declarations Plaintiff offered in support of her definitive denial that she ever signed an arbitration agreement are unreliable. (ECF No. 32 at 4). Defendant's argument is premised in part on the fact that the declarations set forth the testimony of "disgruntled" former employees—Padgett, O'Callaghan and Sellers—who are currently pursuing charges or a lawsuit against Defendant. *Id*. The court will not on summary judgment discount these affidavits merely on the basis of bias. That is a line of attack better suited to cross examination. *See Moore v. Morton*, 958 F.2d 368 (table), 1992 WL

46292, *4 n. 3 (4th Cir.1992) ("[I]t is impossible to weigh the credibility of witnesses based on their affidavits," and the Court "at summary judgment [does] not have ... the benefit of cross examination to evaluate biases and to establish the ability of witnesses to observe what occurred.").

Finally, Defendant challenges the magistrate judge's reliance on the declarations of former employees of Defendant on the basis that none contain firsthand knowledge regarding Plaintiff's execution, or lack thereof, of an arbitration agreement and, therefore, are irrelevant. (ECF No. 32 at 4–7). Relevant evidence is that which tends to make the existence of any fact that is of consequence to the determination of the action more or less probable. *See* Fed. R. Evid. 401. Finding evidence relevant under Rule 401 is a "low bar." *Jones v. Ford Motor Co.*, 204 Fed. App'x 280, 283 (4th Cir. 2006). As Plaintiff points out in her reply, the testimony of former employees that, to their knowledge, there were no arbitration agreements at the time in question is relevant to "Plaintiff's claim[] that she never received any arbitration agreement[] because as the three managerial witnesses declare, they simply did not exist at [Defendant]." (ECF No. 34 at 5). The court rejects this objection as well.

## VI. Conclusion

Having conducted a de novo review of the matter before the court and found no error in the Report, the court **ADOPTS** the Report (ECF No. 31) and agrees with

the recommendations of the magistrate judge. Accordingly, the court, at this time, **DENIES** Defendant's motion to compel arbitration (ECF No. 11) and concludes that the matter should **proceed to trial regarding formation of the arbitration agreement** pursuant to Section 4 of the Federal Arbitration Act.[1]

The court further agrees with the magistrate judge's recommendation (ECF No. 31 at 8) that the parties be afforded a period of limited discovery on the issues addressed in this order. As the parties apparently agree that such limited discovery is necessary prior to trial under section 4 of the FAA, the **court directs them to submit a joint proposed amended scheduling order** within fourteen (14) days of the entry of this order.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

July 17, 2023
Anderson, South Carolina

---

[1] As a result, to the extent Defendant requests sanctions based on Plaintiff's failure to arbitrate, (ECF No. 11-1 at 10-12), the court agrees with the Report (ECF No. 31 at 8) and **DENIES** the request.